# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

NASDAQ, INC.; NASDAQ
TECHNOLOGY AB;

      Plaintiffs,

  v.

IEX GROUP, INC.; INVESTORS
EXCHANGE LLC;

      Defendants.

Civil Action No.: 3:18-cv-03014

## PLAINTIFFS' REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THEIR MOTION TO DISMISS DEFENDANTS' INEQUITABLE CONDUCT COUNTERCLAIM

Michael Critchley, Sr.
Amy Luria
CRITCHLEY, KINUM & DENOIA, LLC
75 Livingston Ave, Suite 303
Roseland, New Jersey 07068
Telephone: (973) 422-9200

Arun Subramanian (Admitted *pro hac vice*)
Jacob W. Buchdahl (Admitted *pro hac vice*)
Mark H. Hatch-Miller (Admitted *pro hac vice*)
SUSMAN GODFREY L.L.P.
1301 Avenue of the Americas, 32nd Floor
New York, New York 10019
Telephone: (212) 336-8330

*Attorneys for Plaintiffs*
*Nasdaq, Inc. and Nasdaq Technology AB*

*Additional counsel listed on signature page*

## <u>TABLE OF CONTENTS</u>

I.     IEX Does Not State a Claim Premised on Optimark and LSE ......................2

    a.     IEX Does Not Specify the Required "Where" .....................................2

    b.     LSE Admittedly Lacked a Key Feature ................................................6

    c.     IEX's Intentional Fraud Allegations Are Implausible ........................7

II.    IEX Does Not State a Claim Premised on Misidentified Inventors.............10

    a.     IEX Does Not Name the True Inventors..............................................10

    b.     IEX's Materiality Allegations Are Implausible ..................................12

III.   IEX Does Not State a Claim Premised on the LBP References...................13

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*AlmondNet, Inc. v. Microsoft Corp.*,
   No. 10-cv-298, 2011 WL 13244166 (W.D. Wisc. Sept. 14, 2011)..................4, 5

*American GNC Corp. v. LG Elec. Inc.*,
   No. 17-cv-1090, 2018 WL 400346 (S.D. Cal. Jan. 12, 2018)...........................14

*Artskills, Inc. v. Royal Consumer Prods., LLC*,
   No. 17-cv-1552, 2018 WL 6304348 (D. Conn. Dec. 3, 2018)............................9

*Auxilium Pharms, Inc. v. Watson Labs., Inc.*,
   No. 12-3084, 2013 WL 5503209 (D.N.J. Oct. 2, 2013) .......................................7

*BLM Prods., Ltd. v. Covves, LLC*,
   No. 17-cv-06224, 2017 WL 8811269 (C.D. Cal. Oct. 26, 2017) ................11, 12

*Bone Care Int'l, LLC v. Pentech Pharms., Inc.*,
   No. 08-cv-1083, 2010 WL 1655455 (N.D. Ill. Apr. 23, 2010) .....................7, 15

*Cumberland Pharms., Inc. v. Mylan Institutional LLC*,
   No. 12 C 3846, 2012 WL 6567922 (N.D. Ill. Dec. 14, 2012).........................8, 9

*DS Smith Plastics Ltd. v. Plascon Packaging, Inc.*,
   No. 15-C-5760, 2016 WL 69632 (N.D. Ill. Jan. 6, 2016) ...................................7

*Exergen Corp. v. Wal-Mart Stores, Inc*,
   575 F.3d 1312 (Fed. Cir. 2009) ................................................................*passim*

*Fujifilm Corp. v. Motorola Mobility LLC*,
   No. 12-cv-03587, 2014 WL 2730724 (N.D. Cal. June 16, 2014) .....................12

*Innovative Biometric Tech., LLC v. Lenovo (U.S.) Inc.*,
   No. 09-81046-CIV, 2010 WL 11447535 (S.D. Fla. Oct. 12, 2010)....................9

*Keystone Global LLC v. Décor Essentials Ltd.*,
   No. 12 Civ. 9077, 2014 WL 888336 (S.D.N.Y. Mar. 6, 2014) ...........................4

*Regeneron Pharm., Inc. v. Merus B.V.*,
   144 F. Supp. 3d 530 (S.D.N.Y. 2015) ..............................................................15

*Seville Classics Inc. v. Neatfreak, Inc.*,
   No. 16-cv-06460, 2017 WL 3473932 (C.D. Cal. Feb. 14, 2017).......................10

*Sloan Valve Co. v. Zurn Indus., Inc.*,
   No. 10-cv-204, 2012 WL 1108129 (N.D. Ill. Apr. 1, 2012) ................................8

*The Medicines Co. v. Teva Parenteral Medicines, Inc.*,
   No. 09-750, 2011 WL 13135647 (D. Del. Aug. 26, 2011) ................................11

*Wi-LAN Inc. v. LG Elec., Inc.*,
   No. 18-cv-01577, 2019 WL1586761 (S.D. Cal. Apr. 12, 2019).......................15

*Zvelo, Inc. v. SonicWall, Inc.*,
   No. 06-cv-00445, 2013 WL 5443858 (D. Colo. Sept. 30, 2013) ................1, 5, 6

**Rules**

Rule 9(b)..........................................................................................................10, 11

Rule 15(a)..............................................................................................................12

IEX's inequitable conduct allegations are deficient and must be dismissed.

*First*, IEX does not specify "where" in the Optimark and LSE Platforms any features common to Nasdaq's patents were found. A disclosure of these platforms would have had no impact on the '362 and '622 Patents unless the platforms included all of the following features: (1) a main memory order book, (2) a matching process with exclusive access to the order book, and (3) a file in persistent storage including information relating to buy and sell orders.[1] IEX's allegations that Optimark included features (2) and (3) are entirely conclusory, simply parroting summarized language from Nasdaq's patents. That is not specific enough. *Zvelo, Inc. v. SonicWall, Inc.*, No. 06-cv-00445, 2013 WL 5443858, at *4 (D. Colo. Sept. 30, 2013) (dismissing counterclaim in part). As to LSE, IEX does not even make a conclusory allegation that the platform contained feature (2), "exclusive access." Opp. at 9-10, 14 (failing to identify this feature in LSE).[2] IEX implies that because the platforms are "systems," not "publications," it is exempt from specifying the "where." But specifying the "where" is mandated by Federal Circuit precedent, which does not recognize any "systems" exception.

*Second*, IEX does not specify the "what" of the alleged inventorship fraud by naming the true inventors on the '362 and '622 Patents. IEX claims it is not

---

[1] Nasdaq adopts IEX's constructions and its descriptions of certain asserted patents as "substantially similar" only for purposes of argument here.

[2] "Opp." references refer to IEX's memorandum in opposition to this motion.

required to name the real inventors to specify the "what." But only one of IEX's three non-binding cases actually goes that far, and that one case is inconsistent with the Federal Circuit precedent establishing the requirement to plead the "what" of the fraud specifically. IEX misreads its other two cited cases, and even misquotes one in a way that makes it appear more helpful to IEX than it really is.

*Third*, IEX cannot plausibly plead that Lupien, Buist, and Potter (the "LBP References") were but-for material to the '622 Patent. The PTO considered all three references during the prosecution of the (per IEX) "substantially similar" '362 Patent. Counterclaim ¶ 127. The '362 Patent was granted because the examiner concluded that no considered reference taught feature (2), the use of a matching process with exclusive access to the order book. IEX cannot have it both ways—claiming, on the one hand, that the LBP References were material to the '362 Patent because they were disclosed in the '622 Patent prosecution; then, on the other hand, ignoring the PTO's conclusion during the '622 Patent prosecution that these three references lacked a key feature, and were not invalidating.

## I.    IEX Does Not State a Claim Premised on Optimark and LSE

### a.  IEX Does Not Specify the Required "Where"

To plead inequitable conduct with "particularity," a complaint "must identify the *specific* who, what, when, where, and how of [a] material misrepresentation or omission committed before the PTO." *Exergen Corp. v. Wal-*

*Mart Stores, Inc*, 575 F.3d 1312, 1328 (Fed. Cir. 2009) (emphasis added). A defendant alleging inequitable conduct must, under this standard, specify "where" in the allegedly withheld prior art the feature(s) that made that prior art "material" to the prosecution of the plaintiff's asserted patent(s) can be seen. *Id.* at 1329. IEX's allegations regarding Optimark and LSE fail this strict test.

The Counterclaim merely paraphrases language from the asserted Nasdaq patents, then states in conclusory fashion that Optimark and LSE performed some of the paraphrased limitations. For example, IEX pleads regarding Optimark:

- "The OptiMark Trading Platform included an order book in main memory."

- "The OptiMark Trading Platform included a matching process that had exclusive access to the order book."

- "The OptiMark Trading Platform disclosed a file in persistent storage including information relating to buy and sell orders."

- "The OptiMark Trading Platform included . . . a memory-based order book; a trade matching engine that had exclusive access to the order book; and a trade matching engine that accessed the memory-based order book to execute trades."

Counterclaim ¶¶ 160, 162, 164, 159. IEX repeats these conclusory assertions in its opposition brief, relying on them as the only "where" allegations. Opp. at 8; *id.* at 9 (reciting similar allegations regarding LSE). IEX's brief specifically disclaims reliance on the so-called "Nasdaq Director Email" as providing additional factual support for its conclusory assertions (and in fact, the email does not). *Id.* at 9 n.3.

3

A simple substitution exercise exposes the inadequacy of IEX's allegations. Suppose the Counterclaim said that, instead of Optimark or LSE, "the Magna Carta disclosed an order book in main memory," and so forth. Before allowing IEX to accuse Nasdaq of defrauding the PTO by failing to disclose the Magna Carta, this Court would of course insist that IEX provide some details explaining the basis for its conclusions that these features were present in the foundational document of Western democracy. IEX's mere say-so would not be enough to avoid dismissal.

IEX hints at the argument—without expressly making it—that inequitable conduct allegations relying on "systems" may be pleaded without the specific "where" allegations required of publications. *Id*. at 7, 10-11. The Federal Circuit has never stated that allegations of inequitable conduct premised on systems are exempt from any of the *Exergen* pleading requirement. The two supposedly supporting district court cases cited in IEX's brief do not say that, either. *Keystone Global LLC v. Décor Essentials Ltd.*, No. 12 Civ. 9077, 2014 WL 888336, at *2 (S.D.N.Y. Mar. 6, 2014) (where defendant argued its own product anticipated plaintiff's claimed invention; and plaintiff admitted that defendant's product added these features, only disputing the timing of the addition); *AlmondNet, Inc. v. Microsoft Corp.*, No. 10-cv-298, 2011 WL 13244166, at *2 (W.D. Wisc. Sept. 14, 2011) (in which defendant, unlike IEX, specified the "where").

4

A sufficient pleading here would have to say *something* specific about (1) how Optimark and LSE were designed, and (2) how those designs satisfied the limitations of the Nasdaq patent claims. *AlmondNet*, cited by IEX, provides an example of the required detail. The challenged counterclaim in that case *did not* simply recite, by rote, that named prior art systems satisfied the limitations of the asserted patents claims. Rather, the counterclaim included detailed facts about how those alleged prior art systems operated, and some analysis tying that operation to the challenged patent claims. *AlmondNet*, 2011 WL 13244166, at *2 ("Am. Ans., dkt. #49, ¶ 57 ('DoubleClick offered internet advertising priced such that the advertiser would pay an additional amount for on targeting criteria and a greater additional amount for two targeting criteria.'); ¶ 59 ('ClickWise ... determine[d] the highest scoring or best ad to return' and supported specific weighed targeting options); ¶ 61 ('NetGravity . . . allowed users to assign[ ] their own values to targeting information.')."). IEX's Counterclaim does not live up to that example.

*Zvelo*, 2013 WL 5443858, at *1, is also instructive. There, the defendant asserted that the plaintiff had failed to disclose four prior art systems to the PTO. *Id*. The district court dismissed the inequitable conduct claim because the defendant had failed to set forth "particularize factual bases" supporting the claim that these systems anticipated the plaintiff's patents. *Id.* at *3-4. The court faulted the defendant for failing to explain where in "technical manuals" associated with

5

the alleged prior art systems the descriptions of the allegedly anticipating features could be found. *Id.* at *4 (discussing the first alleged prior art system and the defendant's failure to plead the "where"). IEX must have reviewed some such technical documentation or other proof about Optimark and LSE before filing its Counterclaim. Otherwise, it is difficult to see how IEX could have any good-faith basis for charging Nasdaq with fraud. But IEX has provided no such detail.

### b.  LSE Admittedly Lacked a Key Feature

Even if the Court disagrees with the above argument, IEX's allegations regarding LSE must still be dismissed. IEX alleges that every claim of the '362 and '622 Patents requires "a 'matching process' (or code, or instructions) that has exclusive access to that order book." Counterclaim ¶ 128. But the Counterclaim nowhere states—not even in conclusory fashion—that LSE included this "exclusive access" feature. IEX's response brief, in two different places, lists the Counterclaim's conclusory allegations regarding *three features* of Optimark (on pages 8 and 12-13), but only *two features* of LSE (on pages 9 and 14). IEX's brief points to a general Counterclaim allegation that "the LSE Platform disclosed all of the elements of claim 1 of the '362 Patent." Opp. at 18 (citing Counterclaim ¶ 185). But the next sentence of the Counterclaim shows that IEX is unwilling to state specifically that LSE included "exclusive access." Counterclaim ¶ 185 ("The

LSE Platform is also material to every claim of the '362 Patent because it discloses the main memory and log file limitations recited in all claims.").

IEX hazards no explanation regarding how LSE could be but-for material without this "exclusive access" feature. IEX only states as *ipse dixit* that its allegations sufficiently show materiality, and then string-cites supposedly supporting district court cases. Opp. at 14-15 (citing *DS Smith Plastics Ltd. v. Plascon Packaging, Inc.*, No. 15-C-5760, 2016 WL 69632 (N.D. Ill. Jan. 6, 2016); *Auxilium Pharms, Inc. v. Watson Labs., Inc.*, No. 12-3084, 2013 WL 5503209 (D.N.J. Oct. 2, 2013); and *Bone Care Int'l, LLC v. Pentech Pharms., Inc.*, No. 08-cv-1083, 2010 WL 1655455 (N.D. Ill. Apr. 23, 2010)). None of these cases in any way suggests that a prior art system lacking a key feature like this could possibly be but-for material. IEX's most recent case, *DS Smith Plastics* demonstrates the opposite. The defendant's counterclaim proceeded there because that defendant sufficiently alleged that a prior art reference taught every limitation of at least one of the plaintiff's patent claims. 2016 WL 69632, at *5. Here, instead, one key element of all claims (as construed by IEX) is missing from LSE.

### c.  IEX's Intentional Fraud Allegations Are Implausible

IEX also has not plausibly alleged that Nasdaq intentionally withheld Optimark and LSE from the PTO. IEX devotes six pages to this issue in its response—but it nowhere explains how the Court could infer Nasdaq had reason to

know that Optimark or LSE had all three features needed to make it but-for
material to the '362 or '622 Patents. IEX's conclusory assertion that "Nasdaq
Prosecution Counsel knew that the OptiMark Trading Platform and LSE Platform
were material," Opp. at 24, is not enough to make its claim plausible.

The only potential factual support cited in IEX's response brief comes from
the Fred Stiening email. *Id.* at 20-21. But that email says nothing about either
Optimark or LSE including the "exclusive access" or "file in persistent storage"
features. At most, it suggests that Nasdaq knew Optimark and LSE included a main
memory order book. But that knowledge alone would not oblige Nasdaq to
disclose these systems to the PTO during prosecution, since the systems would not
have been but-for material unless they also included the other two key features.

IEX's intent cases are distinguishable. *First*, in *Sloan Valve Co. v. Zurn
Indus., Inc.*, No. 10-cv-204, 2012 WL 1108129, at *12 (N.D. Ill. Apr. 1, 2012), the
factual allegations suggestive of fraud included a reference to an apparent
"admission" by the plaintiff that it knew the alleged prior art anticipated its
invention. Nothing like that is alleged here. *Second*, in *Cumberland Pharms., Inc.
v. Mylan Institutional LLC*, No. 12 C 3846, 2012 WL 6567922, at *10-11 (N.D. Ill.
Dec. 14, 2012), the defendant alleged far more than just the fact that withheld
references were known to the plaintiff. The plaintiff plausibly had intimate
knowledge of the features of the alleged prior art from reviewing it, and citing it,

8

during a separate FDA approval process. *Id.* at *11. *Third*, in *Artskills, Inc. v. Royal Consumer Prods., LLC*, No. 17-cv-1552, 2018 WL 6304348, at *7, *10 (D. Conn. Dec. 3, 2018), the defendant alleged that the sole named inventor on the plaintiff's patent told his attorneys about a competing product with related features that were not included in any other prior art. Here, the well-pleaded facts suggest at most that Optimark and LSE utilized main memory order books, whereas the PTO repeatedly found during prosecution of Nasdaq's patent that this feature was also present in other prior art references. Mot. at 13 (citing PTO decision from '622 Patent prosecution).[3] *Fourth*, in *Innovative Biometric Tech., LLC v. Lenovo (U.S.) Inc.*, No. 09-81046-CIV, 2010 WL 11447535, at *4-5 (S.D. Fla. Oct. 12, 2010), an attorney allegedly prosecuted patents related to biometric authentication for paying clients, then later filed his own patents claiming similar biometric authentication inventions, without disclosing his clients' inventions.

Also worth emphasizing, and further distinguishing this case from those cited by IEX, is the fact that Nasdaq openly disclosed Mr. Stiening's email to the PTO during prosecution of the '112 Patent. That alone definitively rebuts any suggestion of intentional misconduct or bad faith during the prosecution of the separate '362 and '622 Patents. IEX offers no plausible explanation regarding why

---

[3] "Mot." references refer to Nasdaq's memorandum in support of this motion.

Nasdaq would have been forthcoming with the email referencing Optimark and LSE in the '112 Patent prosecution, while attempting to defraud the PTO in others.

To get around this significant problem, IEX tries to argue that the timing of Nasdaq's disclosure during the '112 Patent prosecution—at the outset, before assignment of an examiner—was suspect. Opp. at 1, 16-18. But IEX cites zero cases supporting its apparent view that a disclosure of alleged prior art at the beginning of prosecution somehow does not satisfy the applicant's duty of candor. As a matter of common sense, there is nothing suspicious at all about making such a disclosure at the earliest possible opportunity. IEX also completely misses the point when it argues that a Nasdaq-cited case, *Seville Classics Inc. v. Neatfreak, Inc.*, No. 16-cv-06460, 2017 WL 3473932, at *3 (C.D. Cal. Feb. 14, 2017), is irrelevant because it involved a disclosure in an IDS form. That case was decided on the legal principle that what matters for inequitable conduct purposes is not whether the "manner" of disclosure to the PTO was "proper," but whether information was disclosed to the PTO at all.

## II.     IEX Does Not State a Claim Premised on Misidentified Inventors

### a.  IEX Does Not Name the True Inventors

Fairly construed, *Exergen* and Rule 9(b) require a defendant alleging a fraud related to inventorship to specify the "what" of the fraud, *i.e.*, to name specifically who the real inventors are. IEX fails to provide this required detail.

10

IEX claims that *The Medicines Co. v. Teva Parenteral Medicines, Inc.*, No. 09-750, 2011 WL 13135647, at *16-17 (D. Del. Aug. 26, 2011), held there is no need to specify the true inventors in these circumstances. Opp. at 28-29. In doing so, IEX relies on the following language: "In the Special Master's view, APP's failure to name the specific individuals employed by BVL who allegedly should have been named as inventors is not fatal to APP's proposed pleadings. *[redacted]* That is all the information APP has at this time, and the Special Master concludes that APP's allegations satisfy Fed. R. Civ. P. 9(b)." 2011 WL 13135647, at *16. (emphasis added). IEX's brief here omits the word "[redacted]" from the above quote, without indicating in any way to the Court that this quote has been altered.

The redaction suggests that the defendant, in briefing the motion to dismiss, provided the Court with additional details about the "what" of the fraud. The preceding paragraph of the decision similarly indicates in a redacted passage that the defendant supplied more information (likely under seal) about the true inventors in its briefing: "In response to MedCo's argument, APP explains that its proposed amendments do not identify by name [redacted]." *Id.* IEX has not submitted such additional information about the inventor names in briefing here.

IEX's reliance on *BLM Prods., Ltd. v. Covves, LLC*, No. 17-cv-06224, 2017 WL 8811269, at *4-5 (C.D. Cal. Oct. 26, 2017), is misplaced. The out-of-context quotation in IEX's brief relates to the fact that the requirement to plead "who"

11

relates to "who" committed the fraud. A different part of the opinion discusses whether the defendant had specified "what" the inventorship fraud consisted of. There, the defendant's factual allegations plausibly suggested that the named sole inventor had no role whatsoever in the invention process, such that the specific fraud consisted of the false inclusion of his name (and his name only) on the patent. *Id.* at *5. IEX has failed to specify any such false (or missing) inventor.

Finally, the decision in *Fujifilm Corp. v. Motorola Mobility LLC*, No. 12-cv-03587, 2014 WL 2730724, at *1 (N.D. Cal. June 16, 2014), was not a motion to dismiss ruling. Instead, the court there granted the defendant leave to amend its answer and counterclaim to allege inequitable conduct, because the plaintiff failed to "make a strong showing with respect to futility and undue delay to overcome the presumption under Rule 15(a) in favor of granting leave to amend." *Id*. To the extent the decision suggests that inventorship fraud can be alleged without giving specific names, it is unpersuasive, and inconsistent with *Exergen*.

### b. IEX's Materiality Allegations Are Implausible

IEX's claim of fraud regarding inventorship fails for another reason. Nasdaq disclosed Mr. Stiening's concerns about inventorship on the '112 Patent during prosecution of that patent. Despite the disclosure, the '112 Patent was granted. The only reasonable inference to be drawn from these facts is that, had Nasdaq disclosed Mr. Stiening's email during the prosecution of the '362 and '622 Patents,

those patents would have been granted regardless—the disclosure during these other prosecutions would not have been but-for material there, either. IEX's main response to this argument is the claim that Nasdaq disclosed Mr. Stiening's email to the PTO too early in the '112 Patent prosecution. Opp. at 31. As previously stated, there are no cases that support IEX's view on this timing issue.

IEX also argues in its response that "inventorship . . . is material as a matter of law." Opp. at 30. But this argument ignores the real problem with IEX's theory of inequitable conduct. The only specific information that IEX can plausibly say was withheld during the '362 and '622 Patent prosecutions is the same information which was disclosed in the case of the '112 Patent——namely, Mr. Stiening's email (which, per Nasdaq's counsel's disclosure to the PTO, the company disagreed with). IEX provides no explanation of what other information Nasdaq had, and failed to disclose, about inventorship. If anything, a disclosure of Mr. Stiening's email in the '362 and '622 Patent prosecutions would have been even less material there than it was in the case of the '112 Patent. That is because Mr. Stiening's email does not expressly mention the '362 and '622 Patents at all.

## III.      IEX Does Not State a Claim Premised on the LBP References

IEX's claim regarding the LBP References is logically incoherent. These references were reviewed by the PTO during the '362 Patent prosecution; IEX characterizes that patent as "substantially similar" to the '622 Patent. Counterclaim

¶ 127. Because the '362 Patent was granted over the references, IEX cannot plausibly claim these references were "but-for material" the '622 Patent, such that Nasdaq was duty-bound to disclose them in the course of prosecution. After all, IEX makes no specific allegations that these references were somehow more material to the '622 Patent than they were to the '362 Patent.

IEX repeatedly complains that Nasdaq's arguments about the LBP References "go to the merits." Opp. at 33. There is no prohibition on resolving "merits" issues on a motion to dismiss, so long as there is only one reasonable inference to be drawn from the allegations and other reviewable materials. Here, there is only one such possible reasonable inference. IEX itself relies on the fact that the LBP References were cited in the course of other Nasdaq Patent prosecutions as the basis for alleging these references were fraudulently withheld during prosecution of other Nasdaq Patents. Having itself relied on part of the prosecution history record, IEX cannot just conveniently ignore how those other prosecutions ultimately ended—with a patent being granted over the same art.

IEX further argues that "courts routinely uphold inequitable conduct claims based on a failure to disclosure prior art cited in related prosecutions." Opp. at 35-36. This argument and IEX's cited cases are beside the point, given the context of the allegations here. Opp. at 35-36. In *American GNC Corp. v. LG Elec. Inc.*, No. 17-cv-1090, 2018 WL 400346, at *4 (S.D. Cal. Jan. 12, 2018), the plaintiff's

14

related patent was ultimately rejected over withheld prior art. Similarly, in *Bone Care Int'l*, 2010 WL 1655455, at *6-7, the court could infer that withheld prior art was material because it led to the rejection of other patents. In *Regeneron Pharm., Inc. v. Merus B.V.*, 144 F. Supp. 3d 530, 560, 579-82 (S.D.N.Y. 2015), the court resolved disputes following a bench trial, not a motion to dismiss; and as in IEX's other cases, the withheld references led to rejection of other patents.

Here, unlike in any of IEX's cases, Nasdaq's "substantially similar" '362 Patent was ultimately *granted* even though the PTO was of course fully aware of the LBP references. Lupien in particular was never cited by the PTO at all during the '362 prosecution after its disclosure by Nasdaq—so there is certainly not a colorable argument that reference may be but-for material to the '622 Patent application. Mot. at 11, 29. Regarding Buist and Potter, IEX alleges the '362 Patent was allowed because of an amendment which was not made to the '622 Patent. Opp. at 35. The prosecution history tells a different story. *Cf. Wi-LAN Inc. v. LG Elec., Inc.*, No. 18-cv-01577, 2019 WL1586761, at *9-10 (S.D. Cal. Apr. 12, 2019) (disregarding allegations inconsistent with the prosecution history). The '362 Patent was allowed because no identified reference taught or rendered obvious "restricting access of the order book." Mot. at 30 (quoting PTO ruling). Thus, the PTO ultimately concluded after numerous rounds of briefing this very issue that IEX's understandings of Buist's and Potter's features are erroneous.

Dated:  May 24, 2019       Respectfully submitted,

By:    */s/ Michael Critchley, Sr.*
        Michael Critchley, Sr.
        Amy Luria
        CRITCHLEY, KINUM & DENOIA, LLC
        75 Livingston Ave, Suite 303
        Roseland, New Jersey 07068
        Telephone: (973) 422-9200
        mcritchley@critchleylaw.com
        aluria@critchleylaw.com

        Arun Subramanian (Admitted *pro hac vice*)
        Jacob W. Buchdahl (Admitted *pro hac vice*)
        Mark H. Hatch-Miller (Admitted *pro hac vice*)
        SUSMAN GODFREY L.L.P.
        1301 Avenue of the Americas
        32nd Floor
        New York, New York 10019-6023
        Telephone: (212) 336-8330
        jbuchdahl@susmangodfrey.com
        asubramanian@susmangodfrey.com
        mhatch-miller@susmangodfrey.com

        Joseph S. Grinstein (Admitted *pro hac vice*)
        SUSMAN GODFREY L.L.P.
        1000 Louisiana St. Suite 5100
        Houston, Texas 77002-5096
        Telephone: (713) 653-7824
        jgrinstein@susmangodfrey.com

        ***Attorneys for Plaintiffs Nasdaq, Inc. and Nasdaq***
        ***Technology AB***

16

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a true and correct copy of the foregoing instrument has been served on the following counsel of record, this 24th day of May, 2019, as indicated below:

WALSH PIZZI O'REILLY FALANGA LLP
One Riverfront Plaza
1037 Raymond Blvd., Suite 600
Newark, NJ 07102
Liza M. Walsh
lwalsh@walsh.law
Katherine Romano
kromano@walsh.law
William T. Walsh, Jr.
wwalsh@walsh.law

MORRISON & FOERSTER LLP
425 Market St.
San Francisco, CA 94105
Michael A. Jacobs
mjacobs@mofo.com
Richard S.J. Hung
rhung@mofo.com
Barbara Barath
bbarath@mofo.com

MORRISON & FOERSTER LLP
250 West 55th St.
New York, NY 10019
Kyle W.K. Mooney
kmooney@mofo.com
Sarah Prutzman
sprutzman@mofo.com

/s/ Christopher L. Fox
Christopher L. Fox

Dated:          May 24, 2019